## Smith, Appellant, v. Bloomington Coal Co.

*Wills—Construction—Life estate or fee simple—Cutting down estate in fee—Direction to wife as to her will—Acts of April 8, 1833, P. L. 250, and June 7, 1917, P. L. 403.*

1. Where the dominant purpose shown by a devise is to vest a fee, the estate cannot be stripped of its inherent attributes by subsequent words indicating an intent so to do.

2. Where a testator's dominant purpose is to give his estate absolutely and in fee to his wife, and his secondary intent to control her testamentary disposition of it, the secondary intent must give way, and the wife takes a fee.

3. Where testator first devises certain real estate to his wife expressly for life and subsequently in the same item devises and bequeaths to her in general terms the residue of his estate, including real estate other than that thereto devised to her for life, and then enjoins upon her to make a will leaving such residue equally between his and her heirs, the wife takes an estate in fee in the residue.

*Practice, C. P.—Case-stated—Omission of proper parties—Title of real estate—Appeals.*

4. A court should never undertake to declare title to real estate good and marketable unless all the parties in interest are present on the record.

5. A case-stated should set forth all conceivable relevant facts.

6. Where, on appeal from a judgment on a case-stated, it appears that all parties in interest have not been made parties of record, the case will be remitted so that the proper parties may be brought on the record.

Argued January 5, 1925. Appeal, No. 59, Oct. T., 1924, by plaintiff, from judgment of C. P. Indiana Co., Sept. T., 1923, No. 289, for defendant, on case-stated, in suit of Sarah C. Smith v. Bloomington Coal Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Case-stated to determine title to real estate. Before LANGHAM, P. J.

The opinion of the Supreme Court states the facts. Judgment for defendant. Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*Ernest Stewart,* for appellant.—Mrs. Smith took a fee: Pennock's Est., 20 Pa. 268; Kinter v. Jenks, 43 Pa. 445; Hopkins v. Glunt, 111 Pa. 287; Foreign Missions v. Culp, 151 Pa. 467; Boyle v. Boyle, 152 Pa. 108; Miller v. Stubbs, 244 Pa. 482; Chew v. Chew, 266 Pa. 526; Herskovitz's Est., 81 Pa. Superior Ct. 379.

*E. Walker Smith* and *Cunningham & Fisher,* for appellees.—A fee simple estate may be restricted to a life estate: Urich's App., 86 Pa. 386; Livezey's Est., 106 Pa. 201; Shower's Est., 211 Pa. 297; Smith v. Piper, 231 Pa. 378, 384; Ferguson's Est., 76 Pa. Superior Ct. 599; Croft v. Trust Co., 272 Pa. 514.

The words "wish" and "desire" when used in a will to express the intention and will of the testator are mandatory: Taylor v. Martin, 20 W. N. C. 27; Presbyterian Board of Foreign Missions v. Kulp, 151 Pa. 467; Dickinson's Est., 209 Pa. 59; Carey's Est., 14 Pa. Dist. R. 891; Sellers v. Myers, 56 Pa. Superior Ct. 207; Croft v. Trust Co., 30 Pa. Dist. R. 377.

The last clause in a will controls when repugnant to a former clause: White's Est., 132 Pa. 17; Zimmerman's Est., 23 Pa. Superior Ct. 130.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 26, 1925:

This controversy came before the court below in the form of a case-stated, with the stipulation that, if it should be decided plaintiff had a fee simple title to certain real estate, a money judgment was to be entered in her favor, otherwise in favor of defendant. It was de-

termined that plaintiff had but a life estate; hence judgment was entered for defendant, and this appeal ensued.

The case-stated agreed on the following facts: E. W. Smith died May 25, 1917, testate, leaving a widow but no children, seized in fee of the land here involved, which became part of his residuary estate. After a number of devises and bequests to others, testator, by item 7 of his will, left to his widow an estate for life in a piece of property, not here involved, using the specific words "a life estate"; he also left her "six thousand dollars, in cash," to be paid "immediately upon [his] death," the household belongings which they had enjoyed together, and the private residence in which they had lived. Following this, and still in the same item, appears the portion of the will which gives rise to the question in this case, wherein testator provides: "I give, bequeath and devise to my said beloved wife all the rest and residue of my estate.......not specifically hereinbefore given, bequeathed or devised under this will. I hereby, however, enjoin upon my said beloved wife that she make, execute her last will and testament wherein and whereby she will make, give, bequeath and devise all of her estate which she has derived or secured from me under this will to her heirs and to my legal heirs and devisees under this will, in equal proportion—that is one half of said estate to her heirs and the other one half of said estate to my heirs."

Section 9 of the Act of April 8, 1833, P. L. 250, now section 12 of the Act of June 7, 1917, P. L. 403, provides that "All devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate"; and the present will indicates that testator was cognizant of the effect of this legislation, for, although in certain of the devises, prior to those contained in item 7, he employs words of inheritance, in

others, where his purpose to give an absolute estate is equally clear, he omits such words. But the court below, construing the will in its entirety, concluded that, as to the properties here involved, testator's intention to give plaintiff less than a fee sufficiently appeared; with this conclusion we cannot agree.

The guiding rule in such case has been stated by us many times, the latest instance being in Deeter's Est., 280 Pa. 135, this court there saying, at page 141: "Where the dominant purpose shown by a devise is to vest a fee, this estate cannot be stripped of its inherent attributes by subsequent words indicating an intent so to do...... On the other hand,......, in finding the controlling intention, all the words used by testator should be taken into account, and if the intent to restrict [in the sense of making a gift of less than a fee] is clearly the dominant one, it must be given effect." For other recent illustrations of the same principles see Williamson v. Greene Imp. Co., 278 Pa. 358, 361; Wettengel's Est., 278 Pa. 571, 573; Pattin v. Scott, 270 Pa. 49, 53; and Long's Est., 270 Pa. 480, 485-6. In the last named case we said that, after a testator had used words "sufficient to vest an absolute interest, [he] must indicate a fairly clear intention to take away the estate previously given before a divestiture can be upheld."

In considering the present will as a whole, we are not particularly aided by those parts which make bequests or devises to persons other than testator's widow; however, when we read the portions dealing with the widow's interest, we can sufficiently deduce from them that testator's "dominant purpose" was to give his residuary estate (including the property in controversy) absolutely and in fee to his wife, his secondary intent being to control her testamentary disposition of it.

At the beginning of the seventh item (which includes the sections dealing not only with specific bequests and devises to the widow, but also with the residuary estate), testator gives to his wife a life estate, employing

the words "life estate," to denote the interest she is to take in the property there dealt with (this property, as previously noted, is not involved in the present controversy) ; then he gives to her, without suggesting a desire to confer less than an absolute estate, certain real and personal property, and, next, devises to her his residuary estate, again without limitation or restriction. But, after the devises and bequests, absolute in form, testator, later on in the paragraph disposing of his residuary estate, attempts to direct his widow's testamentary disposition of "all of" the estate which she "derived or secured" from him under the will. Taking the seventh item as a whole, considering the specific devise of "a life estate" made by testator at the beginning thereof, as well as his gifts in the three following paragraphs, it becomes quite plain, when we read the residuary devise, that his effort to control the devisee's testamentary disposition of the estates in fee previously given her represents a subordinate intent, which, under well established law, must fall.

Had testator's dominant intent been one of reducing the absolute estates given his wife, instead of controlling her testamentary disposition of them, it is reasonable to assume (in view of the manner in which, immediately prior to the creation of these absolute estates, he dealt with another property, where he aptly gave his wife but a life interest) that he would have qualified them himself rather than "enjoin" her so to do. Of course, the word "enjoin" is ordinarily an imperative one, but that it may be given less than mandatory force is shown by our decision in Good v. Fichthorn, 144 Pa. 287, 292, 293. There the testator left an estate in fee to his widow, after which he provided thus: "I do hereby enjoin and direct her to make and publish her last will and testament that, after her decease, all the rest and residue ......shall be divided, the one half in equal shares among my brothers and sisters or their heirs, and the other half in equal shares among the brothers and sisters

of my said wife, or their heirs." This provision is quite
similar to the one in the present will. In deciding that,
notwithstanding the use of the word "enjoin" in tes-
tator's attempt to control his widow's testamentary dis-
position of the property left to her, she took an estate
in fee, we said, inter alia: "Testator gave a fee simple
[estate] to his widow......but it is also clear that he
still thought it......permissible for him to prescribe
how it should be used......; it is true that the words
he [employs] in regard to the making of her will, 'en-
join and direct,' are strong words......ordinarily im-
porting command,......but......so used [by him] as
to indicate only an intent, not to reduce the estate pre-
viously given, but to control one of its incidents, [and]
where that is the intent, no words, however strong,
amount to more than a request which cannot be enforced
by law." This language is applicable to the instant
case, and, were the record in proper condition, we would
give final judgment for plaintiff; but, as pointed out in
the next paragraph, the record must be returned to the
court below with directions to enter judgment only when
it is clearly shown that all parties in interest have ap-
peared.

In Hebron v. Magda, 280 Pa. 508, 510-11, citing
Schuldt v. Reading Trust Co., 270 Pa. 363, 366, we re-
cently said: "A court should never undertake to declare
title to real estate good and marketable unless all the
parties in interest are present on the record,......and
a case-stated should set forth all conceivable relevant
facts......, (see also Springfield R. E. Co. v. Kellett,
281 Pa. 398, 400, 401) [for] whatever is not distinctly
and expressly agreed upon and set forth [therein]
as admitted, must be taken not to exist." The death
of plaintiff in the present case was suggested of record
and her personal representative substituted in the court
below; also, on petition filed, the "legal heirs" of E. W.
Smith, testator, were allowed to intervene and become
parties defendant; then, at the argument in this court, a

petition to intervene was presented, signed by four persons, who, counsel informed us, were the heirs of testator's deceased widow. There is nothing in these petitions, however, to show that the persons named constitute the legal heirs of testator and of his widow; or, if they do, that they represent all of such heirs and that they are of full age,—facts essential to perfect the record.

The judgment is reversed and the record remitted to the court below, in order that the petitions to intervene may be supplemented by proper averments. Should these amendments be made, and it is shown that all persons concerned are before the court in such manner as to permit a legal adjudication of their interests, judgment may be entered for plaintiff, as agreed upon in the case-stated. If all parties in interest are not added within a reasonable time, the court below will withhold the entry of judgment and strike from its records the case-stated.